746 So.2d 1255 (1999)
ALLSTATE INSURANCE COMPANY, Petitioner,
v.
Nelson Wardell PINDER, et al., Respondent.
No. 99-1869.
District Court of Appeal of Florida, Fifth District.
December 30, 1999.
Richard A. Sherman, of Richard A. Sherman, P.A., Fort Lauderdale, and Gregory S. Stark, of Jack, Wyatt, Tolbert & Turner, P.A., Maitland, for Petitioner.
H. Clay Parker, IV, of Parker, Burke, Landerman & Parker, P.A., Orlando, for Respondent.
GRIFFIN, J.
Allstate Insurance Company seeks certiorari review of the trial court's order overruling Allstate's objections to Nelson Wardell Pinder's request to produce documents. We grant the writ.
The factual background of this dispute is as follows. Nelson Pinder was injured in an automobile accident. He and his wife brought suit against Allstate for UM/UIM benefits and against the negligent drivers, Cooper and Wilson. Relying on the Fourth District's decision in Allstate Insurance Company v. Boecher, 733 So.2d 993 (Fla.1999), the plaintiffs sent a Request to Produce to Allstate asking for four "lists" of documents and records concerning Drs. Uricchio and Gilmer. Request number 1, for example, calls for:
1. List documents showing the identity of cases in the last three (3) years in which Joseph Uricchio, M.D. and/or Raymond Gilmer, M.D. and/or their professional associations were retained to perform independent medical examinations, compulsory physical examinations, PIP examinations, and/or medical record review(s) of Claimant(s), Plaintiff(s) and/or insured(s). (Emphasis added.)
2. List documents showing the number of times in the past three (3) years in which Joseph Uricchio, M.D. and/or Raymond Gilmer, M.D. and/or their professional associations were retained to perform independent medical examinations, compulsory physical examinations, PIP examinations, and/or medical review(s) of insured(s), Claimant(s) and/or Plaintiff(s).
3. List documents showing the amount of money paid to Joseph Uricchio, M.D. and/or Raymond Gilmer, M.D., and/or their professional associations in the last three (3) years for performing independent medical examinations, compulsory physical examinations, PIP examinations, and/or medical record review(s) of Claimant(s), Plaintiff(s) and/or insured(s).

*1256 4. List documents showing the amount of money paid to Joseph Uricchio, M.D., and/or Raymond Gilmer, M.D., and/or their professional associations in the last three (3) years to attend trial, depositions and/or arbitrations for the purpose of testifying to medical expert opinions.
Allstate timely responded, objecting to the Request to Produce on two grounds: that Dr. Gilmer had not been hired by Allstate and that it did not maintain the "lists" requested by the plaintiffs. They advised respondents that Dr. Uricchio had copies of subpoenas he had been served for purposes of deposition or trial testimony over the last three years. In further support of Allstate's objections to the discovery, Allstate filed the affidavit of Vince Leonard, setting forth the burdensome nature of the requests, including an estimate that it would cost over $21,000 to create the lists of documents the plaintiffs requested. The affidavit noted that between 1996 and 1999, Allstate had made 1,413 payments directly to Dr. Uricchio and Dr. Gilmer, but Allstate's records did not identify the purpose of the payments. The affidavit established that Allstate's computer system could track payments made to doctors based on their taxpayer identification number; but this did not identify what service was being paid for; did not break out and identify whether a doctor on a particular case was paid to do IME, was the treating physician in a PIP case or a liability case; whether their advice was sought pre-suit, or whether deposition testimony was given because the doctor was a treating physician contacted to do a pre-suit IME, etc.
The Plaintiffs position was that the decision of the Florida Supreme Court in Boecher required Allstate to create and supply the requested documents. They also urged that it would not be "fair" for the Pinders to bear the expense of compiling this data they were requesting because Dr. Uricchio testified frequently for Allstate and that lots of plaintiffs would want the same documents. They reasoned: "Why should the Pinders pay and let other plaintiffs get the benefit for free?" Also, they urged it was Allstate's "fault" that it would be expensive to create these lists because Allstate hadn't set up its computers to generate the reports the plaintiffs wanted. These arguments evidently were persuasive to the lower court, because the court ruled that Boecher required these documents to be created and that Allstate must bear the cost of creating these documents because "they're going to have numerous requests" based on Boecher.
The petitioner complains about this discovery order on several grounds: 1) no party is required to create a document that it does not have in order to respond to a request for production of documents; 2) requiring a party to undertake such an analysis and create such a document at such an expense is unduly burdensome and oppressive; 3) if one party is to be put to such expense by another party, the requesting party should be required to pay for it or, at least, to post a bond to secure payment of those costs, and 4) the argument that this plaintiff should not bear the cost of their discovery request because later plaintiffs would get these lists for free is specious.
Requiring the creation of these lists was error. First, Boecher does not support the order under review. Boecher simply held that a party to a lawsuit may obtain discovery from the opposing party concerning its relationship with an expert. Boecher involved interrogatories, not a request to produce and the information requested was not nearly as detailed. Notably, the Boecher court expressly did not consider the issue of undue burden. A party may be entitled to know the extent of the financial connection between the opposing party and a witness but Boecher does not hold that a party is entitled to the amount of detail requested here or to have the data sorted out as requested by the plaintiffs in this case. Even if it were, nothing in Boecher suggests a party should *1257 be entitled to have another party respond to a request to produce by creating a non-existent document.
Respondent misuses our decision in Orkin Exterminating Co. v. Knollwood Properties, Ltd., 710 So.2d 697 (Fla. 5th DCA 1998). There we simply said an expert must supply the information required by Florida Rule of Civil Procedure 1.280(b)(4)A(iii), and cannot avoid this duty denying he has a document that contains the information or by asserting that the data could only be found in non-discoverable financial or business records. We simply held that if the expert is to testify, he must disclose what the rule requires, including the identity of the cases in which the expert has testified. This case presents a different issue entirely.
Petitioner's victory in this case may be somewhat pyrrhic, however. If served with properly drafted interrogatories, petitioner would have to provide at least part of the requested information and could not claim compensation for it. Exactly how much information respondent truly needs or wants is unclear and exactly how much information is truly relevant and discoverable under Boecher is not before us. Any genuine dispute over the margins of this kind of discovery should be presented more concisely to the trial court. More responsible lawyering on both sides should have obviated the need for this appellate proceeding entirely.
WRIT GRANTED; ORDER QUASHED.
ANTOON, C.J., and DAUKSCH, J., concur.