855 So.2d 636 (2003)
ALLSTATE INSURANCE COMPANY, Petitioner,
v.
Catherine M. HODGES, Respondent.
No. 2D03-281.
District Court of Appeal of Florida, Second District.
August 15, 2003.
*638 Richard A. Sherman, Sr., of Law Offices of Richard A. Sherman, P.A., Fort Lauderdale; and Lynne E. Dailey of George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, Fort Myers, for Petitioner.
Thomas M. Pflaum, Micanopy; and Randall L. Spivey of Associates & Bruce L. Scheiner, Fort Myers, for Respondent.
STRINGER, Judge.
Allstate Insurance Company seeks certiorari review of the trial court's order granting Catherine M. Hodges' motion to compel discovery in this automobile injury case. Allstate argues that the trial court departed from the essential requirements of the law in (1) ordering Allstate to answer interrogatories concerning the relationship between Allstate and three medical groups with which Allstate's doctors were affiliated, and (2) declining to require Hodges to post a bond for the estimated cost of complying with the court order. We conclude that the trial court did not depart from the essential requirements of the law in ordering Allstate to answer the interrogatories or in denying Allstate's request that Hodges post a bond in this case. Accordingly, we deny the petition.
This was a standard automobile accident, alleging soft-tissue injuries. Hodges propounded the following interrogatories to Allstate:
1. Please identify each case in which members, employees, or experts of Florida Neurology Group and/or Neurology Specialists of Southwest Florida have testified as an expert witness by deposition during the past three years for ALLSTATE INSURANCE COMPANY.
2. Please identify each case in which members, employees, or experts of Florida Neurology Group and/or Neurology [S]pecialists of Southwest Florida have testified as an expert witness in trial during the past three years for ALLSTATE INSURANCE COMPANY.
3. For the past three years, how many litigation cases [h]as Florida Neurology Group and/or Neurology [S]pecialists of Southwest Florida performed an analysis, examination or rendered opinions for ALLSTATE INSURANCE COMPANY.
4. Please identify the total amount of money that members, employees, or experts of Florida Neurology Group and/or Neurology [S]pecialists of Southwest Florida have been paid during the past three years by ALLSTATE INSURANCE COMPANY.
5. Please identify each case in which members, employees, or experts of Neurology Associates of Lee County have testified as an expert witness by deposition during the past three years for ALLSTATE INSURANCE COMPANY.
6. Please identify each case in which members, employees, or experts of Neurology Associates of Lee County have testified as an expert witness in trial during the past three years for ALLSTATE INSURANCE COMPANY.
7. For the past three years, how many litigation cases [h]as Neurology Associates of Lee County performed an analysis, examination or rendered opinions for ALLSTATE INSURANCE COMPANY.
8. Please identify the total amount of money that members, employees, or experts of Neurology Associates of Lee County have been paid during the past three years by ALLSTATE INSURANCE COMPANY.
9. Please state the taxpayer identification number of the Defendant, ALLSTATE INSURANCE COMPANY.
*639 Allstate's answers to the interrogatories refer to the attached affidavit of James McKay. In the affidavit, McKay states that there is no central file, document, record, or database currently in existence at Allstate that contains all the information requested. Allstate can furnish the total amount paid to the doctors from the 1099 tax forms, but this does not reveal the specific medical or healthcare services provided by the doctors. Payments reflected in the 1099s could be for (1) treatment of an Allstate insured, (2) treatment of a claimant injured by an Allstate insured, (3) reimbursement for deposition or trial testimony, (4) consulting, or (5) an independent medical examination.
The affidavit further reveals that for the calendar years of 1999 through 2001, Allstate made 683 payments to Neurology Specialists of Southwest Florida and 162 payments to Neurology Associates of Lee County, for a total of 845 payments. Allstate paid Neurology Specialists of Southwest Florida $225,725.34 from 1999 through 2001 and paid Neurology Associates of Lee County $22,253.07 during the same period. The list does not identify the purpose of the payments or which specific physician performed the service. A review of the actual claim files would need to be made to determine the purpose of the payments. It would take two minutes to locate each file, and since approximately fifty percent are in storage and it costs Allstate $2 per file for retrieval from storage, this would cost $845. Then it would take two to four weeks to retrieve the files. It would take approximately thirty minutes per file to review the file, which would be 422 hours. This would take two adjusters, working forty hours a week, five weeks to complete the review. The total cost of providing complete answers to the interrogatories would be $11,885.
Also attached to the answers are the affidavits of Joseph Bonk, David Rogers, and Jule Mann. Bonk states that Allstate has a mainframe computer which purges information after a period of time, except for payments reported to the IRS, and that the computer system does not have, and cannot retrieve, the information requested. Rogers avers that once a claim check is received from the bank, the status of the check is changed to a "paid" status and is purged from the data list in thirty to ninety days. The information requested is not on the computers and cannot be retrieved. Mann states that there is no information on the computer from which the specific purpose of payments can be retrieved.
Hodges filed a motion to compel better interrogatory answers, which alleged that the Florida Supreme Court case of Allstate Insurance Co. v. Boecher, 733 So.2d 993 (Fla.1999), requires Allstate to answer these interrogatories. The trial court agreed and subsequently entered an order granting Hodges' motion to compel. Allstate filed a motion for rehearing and/or to post bond for discovery costs, which the trial court denied. It is from these orders that Allstate seeks certiorari review.

Discovery
In order for a party to be entitled to a writ of certiorari, it must show that the order departs from the essential requirements of the law causing material injury to the petitioner. Allstate Ins. Co. v. Langston, 655 So.2d 91, 94-95 (Fla. 1995). In other words, the petitioner must show that there has been a violation of a clearly established principle of law that resulted in a miscarriage of justice. Combs v. State, 436 So.2d 93, 96 (Fla.1983). Most economic concerns regarding the cost of litigation do not involve the essential requirements of the law or a violation of a clearly established principle of law *640 resulting in a miscarriage of justice. Topp Telecom, Inc. v. Atkins, 763 So.2d 1197, 1199 (Fla. 4th DCA 2000).
Information regarding the frequency of an expert's testimony and the corresponding payments to the expert is discoverable from the defendant insurer in a personal injury action. Allstate Ins. Co. v. Boecher, 733 So.2d 993, 997 (Fla.1999). Specifically, information regarding how often the expert testified on behalf of the insurer and how much money the expert has been paid due to its relationship with the insurer is "directly relevant to a party's efforts to demonstrate to the jury a witness's bias." Id. The rationale for allowing such discovery has been explained as follows:
A jury is entitled to know the extent of the financial connection between the party and the witness, and the cumulative amount a party has paid an expert during their relationship. A party is entitled to argue to the jury that a witness might be more likely to testify favorably on behalf of the party because of the witness's financial incentive to continue the financially advantageous relationship.
Any limitation on this inquiry has the potential for thwarting the truth-seeking function of the trial process.... To limit this discovery would potentially leave the jury with a false impression concerning the extent of the relationship between the witness and the party by allowing a party to present a witness as an independent witness when, in fact, there has been an extensive financial relationship between the party and the expert. This limitation thus has the potential for undermining the truth-seeking function and fairness of the trial.
Id. at 997-98.
Since Boecher, this court has dismissed a petition for certiorari seeking to quash an order requiring the petitioner to produce copies of billing invoices submitted by the experts to the petitioner's counsel for the previous three years. See Morgan, Colling & Gilbert, P.A. v. Pope, 798 So.2d 1 (Fla. 2d DCA 2001). In so ruling, this court noted the following four factual similarities between its case and Boecher: (1) each respondent sought information regarding the extent of a financial relationship between an expert witness and a key party in the litigation; (2) the information would disclose the amount of money the expert was paid as a result of its relationship with the petitioner; (3) the information was directly relevant to show bias of the witness; and (4) limiting the discovery of the information "would affect the truthseeking function of a jury, for the failure to present any ultimately admissible information would diminish the jury's right to assess the potential bias of the witness." Id. at 2-3.
This case contains the same four factual similarities to Boecher that were noted in Pope. First, in this case, the respondent, Hodges, sought information regarding the extent of the financial relationship between expert witnesses and the petitioner. Hodges specifically sought information regarding the name of the cases in which the experts testified in deposition or at trial, performed an analysis, or rendered an opinion for the past three years and the corresponding payments. Second, the information would disclose the amount of money the experts were paid as a result of their relationship with Allstate. The information sought in this case is necessary to determine the amount of money the experts were paid because the total amount paid to the experts included payments for nonlitigation-related services that are not relevant to the experts' bias. If Hodges did not receive the information requested, it is quite likely that the trial *641 court would not allow Hodges to use the total amount paid to the experts for impeachment purposes because it would not be an accurate statement of how much Allstate actually paid the experts to help it in litigation. Third, for the above-mentioned reasons, the information was directly relevant to show the bias of the experts, and fourth, limiting the discovery of the information would affect the truth-seeking function of the jury and its right to assess the experts' credibility.
The trial court's decision to require Allstate to provide better answers to the interrogatories in this case is also consistent with the policy behind Boecher. In order to ensure fairness of the trial, the Boecher court expressly contemplated the type of discovery sought here. The court explained that it was attempting to ensure a party's right to argue to the jury that a witness is biased because of its financial relationship with a party. Boecher, 733 So.2d at 997-98. However, in the three years following the issuance of Boecher, Allstate still has not implemented a computer program or system for keeping track of the information. In fact, Allstate used two of the very same affidavits it used in Boecher to explain that its computer system did not have the information requested readily accessible. In this day of the computer age, and in light of the Boecher court's serious emphasis on the need for the very type of information requested, Allstate may want to reconsider adapting its computer system to provide easier access to the requested information.
Furthermore, under Topp Telecom, Allstate's economic concerns would not rise to the level of an undue burden necessary to support a finding of a departure from the essential requirements of the law. See 763 So.2d at 1200. That court has specifically stated that "[a]n erroneous order compelling discovery when the cost and effort to do so is burdensome but not destructive is simply not `sufficiently egregious or fundamental to merit the extra review and safeguard provided by certiorari.'" Id. (citing Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 530 (Fla.1995)). The court also noted that, as in this case, the party imposed upon may later seek reallocation of the costs incurred for the discovery as the prevailing party. Topp Telecom, 763 So.2d at 1200 n. 5.
Allstate relies upon Allstate Insurance Co. v. Pinder, 746 So.2d 1255 (Fla. 5th DCA 1999), and Olivas v. Bravo, 795 So.2d 103 (Fla. 3d DCA 2001), to support its position. Pinder concerns a request for production that seeks information almost identical to that requested in the interrogatories in this case. 746 So.2d at 1255. There, the court granted the writ of certiorari and quashed the trial court's order requiring production of the discovery. Id. at 1257. The court distinguished Boecher because Boecher involved interrogatory responses, as opposed to the production of documents, and the information requested in Boecher was not nearly as detailed as the information requested in Pinder. Id. at 1256. The court concluded that "Boecher does not hold that a party is entitled to the amount of detail requested here or to have the data sorted out as requested by the plaintiffs in this case. Even if it were, nothing in Boecher suggests a party should be entitled to have another party respond to a request to produce by creating a nonexistent document." Id. at 1256-57.
The Pinder court did not determine the issue of whether the defendants would have been required to provide the information in the form of answers to interrogatories, which is the issue before this court. In fact, the Pinder court stated that it would have required the defendant to produce at least some of the requested information *642 if it had been addressing interrogatories. Id. at 1257.
In Olivas, the court did not disclose the exact nature of the discovery sought, but concluded that the request "improperly requires the defendants' liability insurance carrier and their attorneys to produce information... which was not only overly burdensome and irrelevant but is reflected in records which do not exist and which the company was erroneously required to create." 795 So.2d at 103-04. The court concluded that the respondents were entitled only to the carrier's tax identification number and the 1099 tax forms concerning the expert. Id. at 104.
These decisions are distinguishable because they both appear to address document production, as opposed to interrogatory responses. Therefore, this case does not raise the issue of the creation of nonexistent documents addressed in Pinder and Olivas. The interrogatories in this case do not require the creation of a nonexistent document, but merely require the documentation of information already in Allstate's possession. Allstate has not asserted that it could not access the requested information, it merely suggested that doing so would take several weeks because it would have to retrieve many of the files from storage and an adjuster would have to retrieve the information from the files.
Because the trial court's order is consistent with Boecher and does not create an undue burden on Allstate, we conclude that it does not depart from the essential requirements of the law causing material injury to Allstate.

Bond
Allstate argues that the trial court departed from the essential requirements of the law in denying its request that Hodges post a bond for the estimated cost of responding to the interrogatories. It is appropriate for a court to require a party to post a bond to indemnify the producing party against the costs of discovery when the cost is unreasonable and unduly burdensome. Mt. Sinai Med. Ctr., Inc. v. Perez-Torbay, 555 So.2d 1300, 1301 (Fla. 3d DCA 1990); Schering Corp. v. Thornton, 280 So.2d 493, 494 (Fla. 4th DCA 1973). However, the bond requirement "must necessarily be a case by case decision under the applicable circumstances." Schering, 280 So.2d at 494; see also Rinker Materials Corp. v. Navistar Int'l Transp. Corp., 654 So.2d 279, 281 (Fla. 4th DCA 1995). In this case, the trial court may very well have determined that Allstate's discovery costs were not unreasonable and unduly burdensome. Accordingly, it cannot be said that the court departed from the essential requirements of the law in denying Allstate's request for a bond.
Petition for writ of certiorari denied.
WHATLEY and SILBERMAN, JJ., concur.