860 So.2d 1022 (2003)
Sandra LEMAY, etc., Appellant,
v.
Michael KONDRK and Taylor Douglas, etc., Appellee.
No. 5D02-1468.
District Court of Appeal of Florida, Fifth District.
December 5, 2003.
Michael W. Woodward of Keyser & Woodward, P. A., Interlachen, for Appellant.
William R. Waters, Jr. and Gayle Smith Swedmark, and John W. Jolly, Jr., of Jolly, Peterson & Waters, P. A., Tallahassee, for Appellee.

ON MOTION FOR REHEARING
GRIFFIN, J.
We grant appellee's motion for rehearing, withdraw our prior opinion and issue the following opinion in its place:
Sandra Lemay ["Lemay"], as Personal Representative of the Estate of Roy Ault, appeals the dismissal of her wrongful death claim against Michael Kondrk ["Kondrk"], a Putnam County Deputy Sheriff. We reverse.
In deciding whether the complaint states a cause of action, the trial court must confine its review to the four corners of the complaint, draw all inferences in favor of the pleader and accept as true all wellpleaded allegations. We must review such orders de novo. On review, we conclude that the complaint contains sufficient allegations to state a claim that meets the threshold for personal liability set forth in section 768.28(9)(a), Florida Statutes (1998).
REVERSED and REMANDED.
SHARP, W., J., concurs.
ORFINGER, J., dissents, with opinion.
ORFINGER, J., dissents.
I respectfully dissent. I believe the trial court correctly concluded that the amended complaint failed to allege any act on Kondrk's part that could be found to have been in bad faith or with malicious purpose or done in a manner exhibiting wanton and willful disregard of human rights, safety or property, as is required to avoid the qualified immunity afforded Kondrk pursuant to section 768.28(9)(a), Florida Statutes (1998). Lemay's amended complaint alleged that at about midnight on November 1, 1997, Ault drove to a Fast Track convenience store in rural Putnam County, purchased two twelve packs of beer and drove away. At approximately 3:00 a.m., Ault *1023 returned to the convenience store on foot, because his car had broken down. Ault, who was obviously intoxicated, purchased food and another beer, and then went to the store's outside pay phone to call for a ride.
Shortly thereafter, the store clerk called 911, seeking assistance. As Ault was trying to call family members for assistance, Deputy Kondrk arrived. Because it was dark, the exterior of the convenience store and its parking lot were lit. Ault was staggering, was obviously intoxicated, and had urinated in his pants, but had broken no laws. The store clerk had not asked Ault to leave the premises or requested that Kondrk order Ault to leave. Nonetheless, Kondrk ordered Ault and his companion to leave the parking lot. Ault, who was wearing dark clothing, complied, and left the parking lot, walking down Highway 20, a two-lane unlit highway with no sidewalks or paved shoulders. A short time later, Ault returned to the Fast Track parking lot. Kondrk again ordered him to leave, and Ault again walked away down the dark highway. About forty minutes later, Ault was struck and fatally injured by a pickup truck, as he was walking in the traffic lane of Highway 20. Postmortem tests showed that Ault had a blood alcohol level of 0.158.
Lemay instituted a wrongful death complaint against Kondrk individually. The complaint alleged that Kondrk's actions demonstrated a wanton and willful disregard for Ault's rights and safety. Lemay alleged that Kondrk owed a duty not to place Ault in greater peril than he found him, not to create a substantial zone of risk, and not to subject Ault to an unreasonable risk of harm by creating and placing Ault in a dangerous and life threatening situation. On Kondrk's motion, the trial court dismissed the complaint, finding that it "fail[ed] to identify any action or conduct of Michael Kondrk which could be said to have been in bad faith and with malicious purpose or in a manner exhibiting wanton and willful disregard of Mr. Ault's rights."
As an employee of a state subdivision, Kondrk enjoys qualified immunity from suit and liability, except in certain limited circumstances. The scope of that immunity, and the exceptions thereto, are found in section 768.28(9)(a), which, in pertinent part, provides:
No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
The purpose of the qualified immunity granted to state actors in section 768.28(9) is to "immunize public employees from liability for ordinary negligence, while providing injured claimants a remedy against governmental entities though the waiver of sovereign immunity. This ... promote[s] vigorous performance of duties by government employees, free from the fear of negligence actions, while at the same time providing redress through governmental assumption of liability to persons injured by the ordinary negligence of government employees." Rupp v. Bryant, 417 So.2d 658, 671 (Fla.1982) (Boyd, J., dissenting). Granting public employees qualified immunity serves the public interest by allowing those employees to act with independence and without fear of consequences. Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Those consequences *1024 include both liability for money damages, and "the general cost of subjecting officials to the risks of trial, distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." Id. at 816, 102 S.Ct. 2727. Even pretrial matters, such as discovery, are to be avoided, if possible, as "[i]nquiries of this kind can be peculiarly disruptive of effective government." Id. at 817, 102 S.Ct. 2727.
Harlow recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains could reasonably be said to fall outside the parameters of the employee's qualified immunity. The entitlement is an immunity from suit rather than a mere defense to liability; and like absolute immunity, is effectively lost if a case is erroneously permitted to go forward. Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Adopting that reasoning, section 768.28(9) offers qualified immunity both from suit and liability, except in limited circumstances.
In her amended complaint, Lemay contends that Kondrk's actions exhibited a wanton and willful disregard for Ault's rights and safety, not that Kondrk acted in bad faith or with malicious purpose or outside the scope of his employment. While Lemay does not contend that Kondrk intended Ault to be harmed when he ordered Ault to leave the convenience store parking lot, she does contend that a jury could find the risk to Ault's safety (and that of passing motorists) was obvious and foreseeable to any reasonable person, particularly a trained law enforcement officer, and that despite that obvious risk, Kondrk forced Ault out into the darkness, disregarding the consequences of doing so.
Because the sufficiency of the complaint is a matter of law, we review the matter de novo. On a review of a motion to dismiss, we must accept the well-pled allegations of the complaint as true. Fox v. Prof'l Wrecker Operators of Fla., Inc., 801 So.2d 175, 178 (Fla. 5th DCA 2001).[1] We must, therefore, determine whether Lemay's factual allegations, assumed to be true, could be reasonably found to constitute conduct "exhibiting wanton and willful disregard of human rights, safety or property." An analysis of the problem requires an understanding of how "wanton and willful" conduct differs from other forms of negligence. That is necessary because Kondrk loses his immunity from suit only if his actions could reasonably be found to cross this high threshold.
In Ingram v. Pettit, 340 So.2d 922, 924 (Fla.1976), the Florida Supreme Court explained the difficulty in dividing negligence into degrees:
Our jurisprudence has a history of difficulty in dividing negligence into degrees. The distinctions articulated in labeling particular conduct as `simple negligence,' `gross negligence,' and `willful and wanton misconduct' are best viewed as statements of public policy. These semantic refinements also serve a useful purpose in advising jurors of the factors to be considered in those situations where the lines are indistinct. We would deceive ourselves, however, if we viewed these distinctions as finite legal categories and permitted the characterization alone to cloud the policies they were created to foster. *1025 As Ingram recognized, the concept of dividing negligence into degrees (or perhaps, more appropriately, kinds) has been problematic. Courts have encountered great difficulty in attempting to draw clear and distinct lines between the various grades of negligence, concluding that "[p]erhaps no rule can ever be devised which will definitively separate one from the other." Carraway v. Revell, 116 So.2d 16, 19 (Fla. 1959). Different degrees of negligence are easier to demonstrate than to define. "The same conduct, in different settings, could and does result in different degrees of liability." Id. One commentator observed that "attempting to distinguish the degrees of negligence is analogous to separating different hues of gray as opposed to differentiating black from white." Thomas D. Sawaya, Florida Personal Injury and Wrongful Death Actions, § 2.12 (2001-2002 ed.).
Negligence and intentional misconduct describe points on a range of conduct that is potentially negligent; what lies between negligence and intentional misconduct constitutes the degree of negligence. 57A Am.Jur.2d Negligence § 233 (2002). Wanton conduct, or willful and wanton conduct, have been described as lying somewhere between ordinary negligence and intentional conduct. Id. Willful and wanton conduct is generally something more than ordinary negligence but less than deliberate conduct. 57A Am.Jur.2d Negligence § 263 (2002). Most definitions of willful or wanton conduct require that it appear that the defendant had knowledge of existing conditions, was conscious from such knowledge that injury would likely or probably result from his conduct, and with reckless indifference to the consequences consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result. Id. For conduct to be willful and wanton, it must be shown that the defendant knew, or reasonably should have known in light of the surrounding circumstances, that his conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences. 57A Am.Jur.2d Negligence § 264 (2002).
Prosser and Keeton defined willful and wanton conduct thusly:

Willful, Wanton and Reckless. A different approach, at least in theory, looks to the actor's real or supposed state of mind. Lying between intent to do harm, which, as we have seen, includes proceeding with knowledge that the harm is substantially certain to occur, and the mere unreasonable risk of harm to another involved in ordinary negligence, there is a penumbra of what has been called "quasi-intent." To this area the words "willful," "wanton," or "reckless," are customarily applied; and sometimes, in a single sentence, all three. Although efforts have been made to distinguish them, in practice such distinctions have consistently been ignored, and the three terms have been treated as meaning the same thing, or at least as coming out at the same legal exit. They have been grouped together as an aggravated form of negligence, differing in quality rather than in degree from ordinary lack of care.... They apply to conduct which is still, at essence, negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if it were so intended....
The usual meaning assigned to "willful," "wanton," or "reckless," according to taste as to the word used, is that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually *1026 accompanied by a conscious indifference to the consequences. Since, however, it is almost never admitted, and can be proved only by the conduct and the circumstances, an objective standard must of necessity in practice be applied. The "willful" requirement, therefore, breaks down and receives at best lip service, where it is clear from the facts that the defendant, whatever his state of mind, has proceeded in disregard of a high and excessive degree of danger, either known to him or apparent to a reasonable person in his position.
The result is that "willful," "wanton," or "reckless" conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent.... It is at least clear, however, that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simple inattention ... except in those cases where a reasonable person in the actor's place would have been aware of great danger, and proceeding in the face of it is so entirely unreasonable as to amount to aggravated negligence.
W. Page Keeton, et al., Prosser & Keeton Handbook of the Law of Torts § 34, at 212-14 (5th ed.1984) (internal footnotes omitted).[2]
In the final analysis, we must weigh the factual allegations of the complaint against Kondrk's qualified immunity from suit and liability. A court must find no liability as a matter of law if either (a) no duty of care existed, or (b) the doctrine of governmental immunity bars the claim. Kaisner v. Kolb, 543 So.2d 732, 734 (Fla.1989). We believe that individual claims against state actors should be the exception rather than the rule, particularly given the policy considerations in favor of immunizing state actors, although not necessarily state agencies.
Perhaps with the clarity of hindsight, Kondrk's decision to order Ault off the premises was an error in judgment, but to me, it seems to fall far short of the degree of wanton and willful misconduct necessary to overcome Kondrk's qualified immunity from suit and liability. I would affirm the trial court's order.
NOTES
[1] Although immunity is an affirmative defense, where the complaint contains allegations that demonstrate the existence of the defense, it can be considered on a motion to dismiss. See Vaswani v. Ganobsek, 402 So.2d 1350, 1351 (Fla. 4th DCA 1981).
[2] We have similarly struggled to differentiate willful and wanton conduct from other degrees of negligence. In Williams v. City of Minneola, 619 So.2d 983, 986 (Fla. 5th DCA 1993), we said that "reckless conduct is the equivalent of willful and wanton conduct" and that the terms reckless and wanton conduct are interchangeable. In Richardson v. City of Pompano Beach, 511 So.2d 1121, 1123 (Fla. 4th DCA 1987), the court said "the phrase "wanton and willful disregard" connotes conduct much more reprehensible and unacceptable than mere intentional conduct" while in Dyals v. Hodges, 659 So.2d 482, 484 (Fla. 1st DCA 1995), the court equated wanton and willful misconduct with reckless conduct as described in section 500 of the Restatement (Second) of Torts:

The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.