884 So.2d 50 (2004)
Mark ONDREY, Petitioner,
v.
Florence PATTERSON, as Personal Representative of the Estate of John W. Patterson, deceased, Respondent.
No. 2D03-2338.
District Court of Appeal of Florida, Second District.
February 27, 2004.
Rehearing Denied April 30, 2004.
*51 Thomas E. Spencer, Sr. Assistant County Attorney, Clearwater, for petitioner.
Roy L. Glass of Law Offices of Roy L. Glass, P.A., St. Petersburg, for respondent.
SILBERMAN, Judge.
Florence Patterson, as the personal representative of the estate of her son, John W. Patterson, sued Mark Ondrey, a corrections officer with the Pinellas County Sheriff's Office, and others, for the wrongful death of Mr. Patterson. Mr. Patterson committed suicide while he was being held in the Pinellas County Jail. In a motion for summary judgment, Corporal Ondrey alleged that the principles of sovereign immunity and qualified immunity precluded suit against him. The trial court denied Corporal Ondrey's motion. We have certiorari jurisdiction to review *52 the denial of a motion for summary judgment on the issue of immunity. See Bd. of Regents v. Snyder, 826 So.2d 382, 387 (Fla. 2d DCA 2002); Stephens v. Geoghegan, 702 So.2d 517, 521 (Fla. 2d DCA 1997). Based on the record before us, we conclude that the trial court did not depart from the essential requirements of law; therefore, we deny Corporal Ondrey's petition.
Mr. Patterson turned himself in to the Pinellas County Jail after he learned that there was a warrant for his arrest for violation of probation. Booking officers were provided with various medications that had been prescribed to Mr. Patterson for depression and bipolar disorder with psychotic features. Mr. Patterson disclosed a prior suicide attempt, and a psychiatric assessment was performed. The assessment records reflect that Mr. Patterson was anxious, manic, and fearful and that he displayed some confusion. Prior to going to the jail, Mr. Patterson had been hospitalized for depressed mood and suicidal ideation, but the intake records noted that he was not demonstrating suicidal or violent ideation.
Mr. Patterson was held at the jail in a psychological observation unit from September 28, 1999, until his death on October 1, 1999. Corporal Ondrey was on duty in the unit between 3:30 p.m. and 11:45 p.m. on September 30, during which time he had contact with Mr. Patterson.
In his affidavit and deposition testimony, Corporal Ondrey acknowledged that he observed Mr. Patterson weaving something with a shoelace and that he asked Mr. Patterson what he was doing. Mr. Patterson told Corporal Ondrey that he was weaving a cross. Corporal Ondrey took the shoelace away as contraband. Corporal Ondrey testified that shoestrings and other items of clothing are used by inmates to try to commit suicide. He stated that he had been trained on how to assess inmates for suicidal ideation, plan, and execution. To prevent suicides, a detention officer monitors inmates and provides to them care, custody, and control. If an inmate posed a suicide risk or expressed suicidal thoughts, the officer would contact the medical staff and document the inmate's statements. Corporal Ondrey testified that Mr. Patterson gave no indication that he was contemplating suicide and that he was unaware of any information that Mr. Patterson was suicidal or had a history of psychological symptoms.
On September 30, 1999, Tajhon Wilson was an inmate in a cell neighboring Mr. Patterson's cell. Mr. Wilson testified in deposition that he saw Mr. Patterson using a rosary with very strong string to try to commit suicide. Mr. Patterson told Mr. Wilson that he "couldn't take it no more," and Mr. Wilson reported this to Corporal Ondrey. Mr. Wilson observed Corporal Ondrey go to Mr. Patterson's cell, and he heard Mr. Patterson tell Corporal Ondrey that he "can't take it" and that he was going to commit suicide. According to Mr. Wilson, Corporal Ondrey responded, "Don't tell me nothing like that. You ain't attempting suicide. Don't tell me nothing like that. You will be all right." Corporal Ondrey took the rosary, counseled Mr. Patterson for another minute, and left the area.
Mr. Wilson testified that Mr. Patterson then tied a shoelace to a towel rack. Mr. Wilson told Corporal Ondrey, who responded, "Don't worry about it, he will be all right." Mr. Wilson learned the next morning that Mr. Patterson had committed suicide by hanging himself with a shoelace tied to the towel rack during the early morning hours of October 1.
Corporal Ondrey disputed Mr. Wilson's testimony. He stated that he had no reason to believe that Mr. Patterson was suicidal *53 and that he did not have any conversations with Mr. Wilson concerning Mr. Patterson.
In count two of its complaint, the estate alleged that Corporal Ondrey "was acting, or omitting to act in the scope of his employment or function" with the sheriff's office. The complaint asserted that Corporal Ondrey was liable for Mr. Patterson's wrongful death by willfully and wantonly disregarding Mr. Patterson's human rights and safety by, among other things, failing to act in a manner that would have prevented Mr. Patterson's suicide. In count eight, the estate brought a claim pursuant to 42 U.S.C. § 1983 and alleged that Corporal Ondrey violated Mr. Patterson's constitutional rights by being "reckless and deliberately indifferent," by ignoring that Mr. Patterson was "vulnerable and an obvious and imminent risk of suicide or harm to himself," and by failing to take action to prevent Mr. Patterson's suicide.
In his motion for summary judgment, Corporal Ondrey asserted that he was immune from suit. The trial court denied the motion, finding that Mr. Wilson's deposition testimony raised a substantial question of material fact as to the issues of qualified immunity under 42 U.S.C. § 1983 and sovereign immunity under section 768.28(9)(a), Florida Statutes (1999). In reviewing the trial court's ruling on Corporal Ondrey's motion we are required to view all of the facts and inferences in the light most favorable to the estate as the nonmoving party. See Stroud v. Strawn, 675 So.2d 646, 647 (Fla. 2d DCA 1996).
With respect to sovereign immunity, section 768.28(9)(a) provides the following:
No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. ... The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

(Emphasis added.) The issue for summary judgment with respect to Corporal Ondrey's defense of sovereign immunity was whether he showed as a matter of law that he did not act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights or safety so that he could not be held personally liable for Mr. Patterson's death.
Because the trial court's order comes to this court on a petition for certiorari review, Corporal Ondrey must establish that the trial court departed from the essential *54 requirements of law, resulting in material injury that cannot be corrected in a post-judgment appeal. See Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646, 648 (Fla. 2d DCA 1995). The jurisdictional threshold of whether there is material injury that cannot be corrected in a later appeal has been met. See Bd. of Regents, 826 So.2d at 387 (recognizing that a defendant claiming qualified or sovereign immunity would suffer material harm, irreparable on appeal after judgment, if the defendant were required to go to trial because the defendant could not later be reimmunized from suit). Thus, we must determine whether Ondrey has established that the trial court's order constitutes "a violation of a clearly established principle of law that resulted in a miscarriage of justice." Allstate Ins. Co. v. Hodges, 855 So.2d 636, 639 (Fla. 2d DCA 2003) (citing Combs v. State, 436 So.2d 93, 96 (Fla. 1983)).
Pursuant to section 768.28(9)(a), an employee such as Corporal Ondrey does not have sovereign immunity protection if he acts in bad faith, with malicious purpose, or in wanton and willful disregard of human rights, safety, or property. This court has previously stated that an employee's conduct must be something greater than gross negligence in order to be actionable under section 768.28(9)(a). See Sierra v. Associated Marine Insts., Inc., 850 So.2d 582, 592-94 (Fla. 2d DCA 2003).
Mr. Wilson's testimony, even though disputed by Corporal Ondrey, is evidence that Corporal Ondrey disregarded the danger that Mr. Patterson posed to himself. According to Mr. Wilson, Mr. Patterson specifically told Corporal Ondrey that he was going to commit suicide; Corporal Ondrey offered Mr. Patterson a few words of comfort and took away a shoelace or rosary; Mr. Patterson then tied a shoelace to a towel rack, and Mr. Wilson notified Corporal Ondrey; and Corporal Ondrey responded that Mr. Wilson should not worry about it, and he did not return to Mr. Patterson's cell or remove the shoelace. Corporal Ondrey took no further action such as notifying medical personnel or others of his interaction with Mr. Patterson and his purported discussions with Mr. Wilson. The estate argues that this evidence supports its claim that Corporal Ondrey wantonly and willfully disregarded Mr. Patterson's rights and safety by not preventing Mr. Patterson from committing suicide or from using items that could be used to effect his suicide.
The trial court found that Mr. Wilson's deposition testimony raised a substantial question of material fact for resolution by the jury concerning Corporal Ondrey's immunity. Assuming that a jury believes Mr. Wilson's testimony, we agree with the trial court that the jury could conclude that Corporal Ondrey's failure to act under the circumstances amounted to a wanton and willful disregard of Mr. Patterson's safety.
The dissent suggests that an employee such as Corporal Ondrey should not lose sovereign immunity protection unless the employee's conduct approaches conduct that lies outside the course and scope of employment. The dissent's analysis here is that the governmental employer should have the exposure for liability and Corporal Ondrey should be immune.
We cannot agree with the dissent's position because under section 768.28(9)(a), an employee is liable for acts or omissions that are committed within the scope of employment but are committed in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Conversely, the statute frees the governmental employer from liability for acts that are committed outside of the employee's *55 course and scope of employment or are committed by the employee in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Accordingly, we conclude that the trial court did not depart from the essential requirements of law in denying Corporal Ondrey's motion for summary judgment as to sovereign immunity.
With respect to Corporal Ondrey's claim of qualified immunity under section 42 U.S.C. § 1983, "[t]he doctrine of qualified immunity insulates government officials from personal liability for money damages for actions taken pursuant to their discretionary authority." Greason v. Kemp, 891 F.2d 829, 833 (11th Cir.1990). Qualified immunity applies in situations where the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Deliberate indifference to a prisoner's psychiatric needs can amount to a violation of a prisoner's right not to be subject to cruel and unusual punishment under the Eighth Amendment. Greason, 891 F.2d at 834.
The record evidence reflects a genuine issue of material fact: whether a reasonable person in Corporal Ondrey's position would have known that his actions and omissions, under all of the circumstances, amounted to a deliberate indifference to Mr. Patterson's psychiatric needs and constitutional rights. See id. at 834-35. Accordingly, the trial court did not depart from the essential requirements of law by denying Corporal Ondrey's motion for summary judgment as to qualified immunity.
Regarding the other issues raised in Corporal Ondrey's petition, we deny relief without discussion.
Petition denied.
DAVIS, J., Concurs.
ALTENBERND, C.J., Concurs in part and dissents in part with opinion.
ALTENBERND, Chief Judge, Concurring in part and dissenting in part.
I concur with the court's decision denying certiorari review of the defenses raised as to 42 U.S.C. § 1983. I dissent as to the denial of review of the defense of sovereign immunity brought pursuant to section 768.28(9), Florida Statutes (1999). In my opinion, the evidence in this case, in the light most favorable to the plaintiff, reveals only that Corporal Ondrey made an error assessing the gravity of Mr. Patterson's condition. The evidence does not establish the type of claim that creates liability for a government employee while relieving a governmental subdivision of such liability.
I accept the facts as stated by the majority's opinion. I would point out that Corporal Ondrey did not know all of the information provided to the booking officer or to other employees of the sheriff. He is a 32-year-old deputy assigned to supervise people in the county jail. He is a graduate of a correctional academy, not a trained psychologist or psychiatrist. He had contact with Mr. Patterson during a single work shift at the jail.
I agree that these facts establish a cause of action against the Pinellas County Sheriff's Office, as a governmental subdivision, sufficient to permit a jury to decide that Corporal Ondrey was negligent and that his negligence was a legal cause of Mr. Patterson's death. See Beard v. Hambrick, 396 So.2d 708 (Fla.1981). I simply disagree that these facts permit a claim *56 against Corporal Ondrey, individually, for which the sheriff would not be liable.
When the Florida Legislature created a limited waiver of sovereign immunity, it sought to protect government employees from personal liability. To that effect, the legislature enacted section 768.28(9)(a), which is quoted in the majority opinion. Pursuant to this statute, in order for Corporal Ondrey to be liable individually and for the sheriff to be free from liability, either the estate or the sheriff must establish that Corporal Ondrey acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human ... safety."[1]See § 768.28(9). No one seriously suggests that Corporal Ondrey acted with malicious purpose. I agree that the type of conduct that establishes "wanton and willful disregard of human safety" is more difficult to define. See Ingram v. Pettit, 340 So.2d 922, 924 (Fla.1976) (explaining the difficulty of dividing negligence into degrees); see also Fleetwood Homes of Fla., Inc. v. Reeves, 833 So.2d 857, 866 (Fla. 2d DCA 2002).
In the context of this statute, "wanton and willful disregard of human safety" should involve conduct of the type that at least approaches conduct that is "outside the course and scope of his or her employment." See § 768.28(9), Fla. Stat. (1999). In other words, it should be limited to the most extreme misconduct that still manages to fall within the governmental employee's scope of employment. Under the facts in this case, it is obvious that Corporal Ondrey was well within the course and scope of his employment. In hindsight, it clearly would have been better had he decided to transfer this man to the area designed for suicidal prisoners. However, Corporal Ondrey's behavior demonstrates only that he misjudged Mr. Patterson's level of depression, nothing more. His statement to Mr. Patterson that he was not ready to die may have been inadequate lay therapy, but I see nothing in these facts that creates an issue of willful and wanton disregard of human safety. In other contexts, willful and wanton negligence is a high standard that requires conduct more culpable than gross negligence. See Sierra v. Associated Marine Inst., Inc., 850 So.2d 582 (Fla. 2d DCA 2003); Fleetwood Homes, 833 So.2d at 866; W. Page Keeton, et al., Prosser & Keeton on the Law of Torts § 34, at 212-14 (5th ed. 1984) ("The result is that `willful,' `wanton,' or `reckless' conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a higher degree of danger is apparent."). If anything, the willful and wanton disregard standard under this statute should be more protective of the governmental employees than these common law corollaries. See generally Rupp v. Bryant, 417 So.2d 658, 671 (Fla.1982) (Boyd J., dissenting).
I am inclined to believe that the major difference between my approach to this case and that of the majority hinges on the role of the trial judge as gatekeeper in this context. This statutory waiver of sovereign immunity was designed to provide a level of protection for injured plaintiffs while simultaneously protecting public employees from unlimited personal liability. This statute protects public employees in a fashion similar to the protection provided by private employers for their employees through the purchase of liability insurance coverage. By protecting the state employee from personal liability, the statute encourages *57 state employees to provide honest, unfettered testimony concerning claims against the state. The statute contemplates that state employees will rarely be named parties in these cases and will rarely need to retain separate counsel to protect them from a form of personal liability that also creates immunity for the state. These public policies can only be achieved if the trial court acts as a gatekeeper, dismissing actions against state employees except in the extraordinary case that falls within the statutory exception. I join with Judge Orfinger in the belief that relief should be granted to state employees in cases such as this. See also Lemay v. Kondrk, 860 So.2d 1022 (Fla. 5th DCA 2003) (Orfinger J., dissenting).
I would grant relief as to this claim.
NOTES
[1] In this case the lawyer representing Corporal Ondrey also represents the sheriff's office. The sheriff here supports Corporal Ondrey. In another case, a sheriff could argue against his own employee and could make the argument made by the estate in this case.