923 So.2d 1188 (2006)
Sandra LEMAY, as personal representative, etc., Appellant,
v.
Michael KONDRK, Appellee.
No. 5D05-2177.
District Court of Appeal of Florida, Fifth District.
March 10, 2006.
Rehearing Denied March 28, 2006.
*1189 Michael W. Woodward, of Keyser and Woodward, Interlachen, for Appellant.
Keith C. Tischler, of Jolly & Peterson, P.A., Tallahassee, for Appellee.
MONACO, J.
This is the second time this case has been brought to us for review by the appellant, Sandra Lemay, as Personal Representative of the Estate of Roy Ault, her deceased son. Initially, Ms. Lemay appealed the dismissal of her wrongful death complaint against the defendant, Michael Kondrk, a Putnam County Deputy Sheriff. We concluded that the complaint, as amended, contained sufficient allegations to state a claim meeting the threshold for personal liability articulated in section 768.29(a), Florida Statutes (1998), and reversed. See Lemay v. Kondrk, 860 So.2d 1022 (Fla. 5th DCA 2003). Ms. Lemay now appeals a final summary judgment rendered by the trial court in favor of Deputy Kondrk. Because there are controverted facts in the record sufficient to withstand a summary judgment, we once again reverse and remand.
The facts in this case are set forth at length in Judge Orfinger's dissent from the previous opinion in this case. Those facts are now amplified by two affidavits that were filed by Ms. Lemay in the trial court. Briefly, Ms. Lemay's amended complaint and the affidavits in this case reflect that at about midnight on November 1, 1997, Mr. Ault, the decedent, drove to a Fast Track convenience store in rural Putnam County, purchased two twelve packs of beer and drove away. At about 3:00 a.m., Mr. Ault and a friend of his, Robert Younce, returned to the convenience store on foot, his car having broken down. Both were obviously intoxicated. Mr. Ault's clothing was wet with urine, and he was staggering badly. He could not tell a one dollar bill from a twenty. He bought some food and another beer, and went to the store's outside phone to call a relative for a ride. Similarly, Mr. Ault's friend, Robert Younce, was so intoxicated that he did not know where he was.
At about this time, according to the affidavit of the clerk at the convenience store, another customer came into the store and said that a truck and car were in a ditch down the road. The clerk, who knew the decedent as "Sammy," decided to call 911 "to let the police know that I had two staggering drunks in the parking lot."
The defendant, Deputy Kondrk, responded to the 911 call. According to the clerk, Deputy Kondrk "had quite an attitude, like he didn't want to be bothered." The deputy told her that "it's not against the law for them to be out there drunk." Despite his comment, he then went outside and confronted Mr. Ault and Mr. Younce. He ordered Mr. Younce to walk in one direction on the highway, and Mr. Ault to walk the other way. Mr. Ault got to a *1190 nearby stop sign and then returned to the store. The deputy intercepted Mr. Ault with his vehicle, and said to him, "No, I told you to go." Mr. Ault, who was wearing dark clothing, then walked down the two-lane, unlit rural highway with no sidewalks or paved shoulders, and was hit by a car and killed somewhere between four and fifteen minutes later. Postmortem tests reflected that Mr. Ault had a blood alcohol level of 0.158.
In her affidavit the store clerk concludes by saying that she would not have sent Mr. Ault walking down the highway in his condition. Deputy Kondrk's order sending the men down the highway, "struck [the clerk] as strange because they did not even know who they were or where they were." She continued, "I never asked the deputy to do that. I never asked the deputy to tell them to leave or to make them leave."
Ms. Lemay instituted a wrongful death suit against Deputy Kondrk individually. She alleged that the deputy's actions demonstrated a wanton and willful disregard for Mr. Ault's rights and safety. The theory of the complaint is that Deputy Kondrk owed a duty not to place Mr. Ault in greater peril than he found him, not to create a substantial zone of risk, and not to subject him to an unreasonable risk of harm by putting Mr. Ault in a dangerous, life-threatening situation.
Deputy Kondrk eventually moved for summary judgment. He argued in essence that he was immune from liability and suit by virtue of section 768.28(9)(a), Florida Statutes (1998), in that he owed no duty of care to Mr. Ault because he did not take him into custody, and because his act in not taking Mr. Ault into custody was a discretionary act, he was entitled to sovereign immunity "regardless of the risk created by apparent intoxication." The trial court agreed. The court concluded that the deputy was under no duty to take Mr. Ault into custody or to transport him to his home, and therefore owed no duty of care to Mr. Ault.[1] In its summary final judgment the trial court held that "there was no proof in this case that Defendant acted in such a willful and wanton manner so as to justify the imposition of personal liability against him." Under these facts, however, we conceive this as a matter for a jury to decide.
The standard of review governing a trial court's ruling on a motion for summary judgment posing a pure question of law is de novo. See Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla.2001); Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000); see also Fayad v. Clarendon Nat'l Ins. Co., 899 So.2d 1082, 1084 (Fla.2005). In order to determine the propriety of a summary judgment a reviewing court must resolve whether there is any genuine issue as to any material fact and whether the moving party is entitled to a judgment as a matter of law. Fla. R. Civ. P. 1.510(c). The party moving for summary judgment has the burden to prove conclusively the non existence of any genuine issue of material fact. The reviewing court will consider the evidence contained in the record, including any supporting affidavits in a light most favorable to the non moving party. If the slightest doubt exists summary judgment must be reversed. See Mivan (Florida), Inc. v. Metric Constructors, Inc., 857 So.2d 901, 902 (Fla. 5th DCA 2003); Krol v. City of Orlando, 778 So.2d 490, 491-92 (Fla.5th DCA 2001); see also Horizons Rehab., Inc. v. Health Care and Ret. Corp., 810 So.2d 958 (Fla. 5th *1191 DCA), review denied, 832 So.2d 104 (Fla. 2002).
In light of this standard of review, we begin our analysis by examining section 768.28(9)(a), the immunity statute in question. That statute provides in pertinent part:
No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. ... The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by an action against the governmental entity, or the head of such entity in her or his official capacity or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
(Emphasis added).
No one appears to suggest that Deputy Kondrk acted in bad faith or with malicious purpose. Thus, the issue at summary judgment with respect to Deputy Kondrk's defense of sovereign immunity was whether he showed as a matter of law that he did not act in a manner exhibiting wanton and willful disregard of human rights or safety so that he could not be held personally liable for the death of Mr. Ault. See Ondrey v. Patterson, 884 So.2d 50 (Fla. 2d DCA), review denied, 888 So.2d 18 (Fla.2004). Even more precisely, as raised by the facts of this case, the issue was not whether Deputy Kondrk should have taken Mr. Ault into custody. The issue is whether Deputy Kondrk took actions that put Mr. Ault into a more dangerous situation than he would have been had he simply left him alone, and if those actions could be determined by a jury to constitute a wanton and willful disregard of human rights or safety.
Judge Orfinger set out the definition of willful and wanton conduct in his dissent to our earlier consideration of this case. There, he said:
Willful and wanton conduct is generally something more than ordinary negligence but less than deliberate conduct. (Citation omitted). Most definitions of willful or wanton conduct require that it appear that the defendant had knowledge of existing conditions, was conscious from such knowledge that injury would likely or probably result from his conduct, and with reckless indifference to the consequences consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result.
See Lemay, 860 So.2d at 1025.
Given this definition, if we were reviewing this appeal using an abuse of discretion standard, we would probably allow the trial court's determination to stand. This review, however, is de novo. In order to review the legal conclusion of the trial judge we must first decide what test the judge was compelled to use in concluding that the immunity from suit applied. Frankly, this is a rather murky area. We have found no Florida cases that specifically set out a test, so we have turned to the federal bench for help.
*1192 There, we have found a few articulations that are helpful. A fair amalgam of the decisions seems to indicate that the trial court should ask when confronted with this issue on summary judgment whether a reasonable trier of fact could possibly conclude that the conduct was willful and wanton. See, e.g., Carter v. Chicago Police Officers, 165 F.3d 1071, 1081 (7th Cir. 1998); Anderson v. Cornejo, 284 F.Supp.2d 1008, 1036 (N.D.Ill.2003). If Deputy Kondrk was compelled to show conclusively the non existence of any genuine issue of material fact in order to succeed on summary judgment, he did not do so. We think a reasonable jury could conclude that his conduct was willful and wanton. Thus, we reverse.
We fully recognize that the immunity provided by section 768.28(9)(a) is both an immunity from suit and an immunity from liability, and we recognize that an entitlement is effectively lost if the case is erroneously permitted to go to trial. See Tucker v. Resha, 648 So.2d 1187 (Fla. 1994); Seminole Tribe of Fla. v. McCor, 903 So.2d 353 (Fla. 2d DCA 2005). We do not doubt in this regard the insightful legal analysis of Judge Orfinger in his dissent in the earlier iteration of this case. See Lemay, 860 So.2d at 1022. We also find agreement with Judge Altenbernd's dissent in Ondrey, during which he describes the duties of the trial judge as a gate-keeper in these circumstances. See Ondrey, 884 So.2d at 55. We question only when to swing open the gate. We think the gate opens when, as here, a reasonable jury could determine that there was willful and wanton conduct.
REVERSED.
GRIFFIN, J., concurs.
THOMPSON, J., dissents with opinion.
THOMPSON, J., dissenting, with opinion.
I respectfully dissent. Although I agree with the cases cited, especially the citation to Judge Orfinger's dissent in Lemay v. Kondrk, 860 So.2d 1022 (Fla. 5th DCA 2003), I disagree with the conclusion reached by the panel. As I read section 768.28(9)(a), Florida Statutes (2002), Deputy Kondrk has qualified immunity from suit and qualified immunity from liability because he was acting in his discretionary capacity. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In this case, the majority has decided that "there are controverted facts in the record sufficient to withstand a summary judgment." The facts are neither controverted nor disputed. The facts as developed from depositions and affidavits are clear and uncontroverted. At the summary judgment hearing, the parties agreed to the facts. Thus, the only issue remaining is whether, based upon these facts, we should reverse the summary judgment and allow the case to proceed to a jury trial.
The disposition of this case is controlled by the decision in Rodriguez v. City of Cape Coral, 468 So.2d 963 (Fla.1985). There, the Florida Supreme Court held that a police officer could not be held liable for the alleged wrongful death of an intoxicated pedestrian. Id. at 964. In this case, as a gatekeeper, I would not allow this matter to be presented to a jury; I would find that the trial court did not err and the summary judgment was properly granted.
NOTES
[1] The trial court relied on Lindquist v. Woronka, 706 So.2d 358 (Fla. 4th DCA 1998) and Nelson v. Traer, 188 So.2d 65 (Fla. 3d DCA 1966), for this principle.